# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Steven Louis Barnes, # SK-6032, | ) C/A No. 5:13-2349-CMC-KDW |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Carol G. Thueme, Court Reporter, and Court Administration Office, | ) |
| Defendants. | ) |

This is a civil action filed pro se by a state prison inmate. Pursuant to 28 U.S.C. §636(b)(1), and District of South Carolina Local Civil Rule 73.02(B)(2)(e), the undersigned magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

## BACKGROUND

Steven Louis Barnes ("Plaintiff") is South Carolina state prisoner, currently confined at Lieber Correctional Institution, in Ridgeland, South Carolina. He sues a state court reporter and the South Carolina Office of State Court Administration "in their official capacities only for preventive relief" and "in their individual capacities for monetary damages" on his "federal causes of action." Compl. 1, ECF No. 1. He also alleges Defendants are sued in "their personal capacities for state tort claims." *Id*.

Plaintiff alleges that the court reporter negligently prepared the transcripts from his murder trial, and "had made substantial and significant alterations and deletions in [the] transcripts." *Id*. at 3. He asserts the following claims against both Defendants: state-law-based claims of gross

negligence, breach of fiduciary duty, negligence, lible, and slander; and federal claims seeking equitable and monetary relief for violation of his rights to due process and equal protection. *Id*. at 2-18.

Regarding his § 1983 due process and equal protection claims,[1] Plaintiff contends that the court reporter's following the procedures for retention/destruction of the transcript tapes set out by SCACR 607(i) ("Rule 607(i)"),[2] thwarted his ability to correct the problems in the transcripts and, as a result, caused him undisclosed problems in his direct appeal. *Id*. He contends that he was deprived of notice and opportunity to object to the destruction of the tapes before a detached judicial officer after his court-appointed counsel ordered the transcripts, had them transcribed, and set in motion the operation of Rule 607(i). *Id*. at 8.

---

[1] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 731-32 (1989). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted) (emphasis added). No other viable basis for the exercise of this court's federal question subject matter jurisdiction over Plaintiff's allegations is evident from the face of the Complaint. 28 U.S.C. § 1331.

[2] Rule 607 (i), SCACR, states:

(i) Retention of Tapes. Except as provided below, a court reporter shall retain the primary and backup tapes of a proceeding for a period of at least five (5) years after the date of the proceeding, and the court reporter may reuse or destroy the tapes after the expiration of that period. If the proceeding was a hearing or trial which lasted for more than one day, the time shall be computed from the last day of the hearing or trial. *In any proceeding which has been transcribed, the court reporter shall retain the primary and backup tapes which have been transcribed for a period of at least thirty (30) days after the original transcript is sent to the requesting party, to allow any party to challenge the accuracy of the transcription.* If no challenge is received by the court reporter within the thirty (30) day period, the tapes may be reused or destroyed.

Rule 607 (i), SCACR (emphasis added).

Although Plaintiff alleges the destruction of the tapes caused him to have problems in his direct appeal, he does not specify any of the problems he had, nor does he allege anything about steps he and/or his appellate counsel took to object to or correct the alleged problems in the transcripts in connection with the appeal. Instead, Plaintiff asks the court to declare Rule 607(i), SCACR, is unconstitutional as applied to him and on its face for the following reasons: it allegedly does not provide persons whose trial tapes are destroyed with sufficient notice and opportunity to be heard; and it allegedly violates equal protection by favoring non-indigent criminal defendants over indigent defendants. *Id*. at 13.

In the Complaint and in two separate motions, Plaintiff alleges that he is entitled to a declaratory judgment that Rule 607(i) is unconstitutional (Mot. for Declaratory J., ECF No. 5), and a preliminary injunction/temporary restraining order ("TRO") (Mot. for Preliminary Injunction/TRO, ECF No. 4) preventing Defendants from using the Rule in connection with the presently un-transcribed tapes of several Interstate Detainers Act ("IAD") hearings affecting him that he alleges are currently in the possession of undisclosed court reporters. Regarding those hearing tapes, Plaintiff alleges that the five-year retention period under Rule 607(i) "will be soon end[ed]" with them and that he has been trying to obtain possession of the tapes, but has been unsuccessful. Mem. Supp. TRO Mot. 10; ECF No. 4-2.

**INITIAL REVIEW**

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S.

319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

### A. Claims against Office of State Court Administration

None of Plaintiff's allegations states any kind of plausible federal claim (§ 1983 due process or equal protection) against Defendant "Court Administration Office," officially known as the South Carolina Office of State Court Administration ("SCA"), because it is a state agency and protected from federal lawsuits such as this one by the Eleventh Amendment to the United States Constitution. The Defendant SCA is immune from Plaintiff's claims in this case because the Eleventh Amendment to the United States Constitution divests this court of jurisdiction to entertain a suit for damages or equitable relief (injunctive or declaratory) brought against the State of South Carolina or its integral

parts under the circumstances involved in this case. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). As a South Carolina state agency, Defendant SCA is an integral part of the state and, thus, is entitled to Eleventh Amendment immunity in this case. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI; *see Alden v. Maine*, 527 U.S. 706 (1999); *Coll. Savs. Bank v. Fla. Prepaid Educ. Expense Bd.*, 527 U.S. 666 (1999); *Coll. Savs. Bank v. Fla. Prepaid Educ. Expense Bd.*, 527 U.S. 627 (1999); *Bellamy v. Borders*, 727 F. Supp. 247, 248-50 (D.S.C. 1989); *Coffin v. S.C. Dep't of Soc. Servs.*, 562 F. Supp. 579, 583-585 (D.S.C. 1983); *Belcher v. S.C. Bd. of Corrs.*, 460 F. Supp. 805, 808-09 (D.S.C. 1978); *see also Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (although express language of Eleventh Amendment only forbids suits by citizens of other states against a state, Eleventh Amendment bars suits against a state filed by its own citizens).

Under *Pennhurst*, 465 U.S. at 99 n.9, a state must expressly consent to suit in a federal district court in order to avoid the Eleventh Amendment bar. The South Carolina Tort Claims Act provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the state of South Carolina, and does not consent to suit in a federal court or in a court of another state. S.C. Code Ann. § 15-78-20(e). *See McCall v. Batson*, 329 S.E.2d 741, 743 (S.C. 1985) (abolishing sovereign immunity in tort, but "does not abolish the immunity which applies to all legislative, judicial and executive bodies and to public officials who are vested with discretionary authority, for actions taken in their official capacities."); *cf. Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."). As a result, to the extent that Plaintiff sues Defendant SCA on any kind of claim,

this case is subject to partial summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

    **B.    Claims against Defendant Thueme**

        *a.    Due process (liberty interest) standing*

As an initial matter, any federal lawsuit against Defendant Thueme "in her official capacity" is barred by the Eleventh Amendment to the same extent as it is barred against Defendant SCA. *See, e.g., Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity."); *Harter v. Vernon*, 101 F.2d 334, 337 (4th Cir. 1996). No plausible "official capacity" constitutional claim for prospective relief is stated against Thueme under the *Ex Parte Young* exception to Eleventh Amendment immunity, *see Ex parte Young*, 209 U.S. 123, 159-160 (1908), because there is nothing in the Complaint showing that Thueme is an "official" of the SCA "with 'some connection with the enforcement of' [of SCACR 607(i)]," *Hawkeye Commodity Promotions, Inc. v. Miller*, 432 F. Supp. 2d 822, 835 (N.D. Iowa 2006) (quoting *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005)), and a "special relationship" to the disputed Rule and not simply an "employee" of the agency. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332-33 (4th Cir. 2008) (collecting cases showing "special relationship," i.e., "proximity to and responsibility for," required between state official sued under *Ex Parte Young* and the law/rule sought to be enjoined); *Summers v. Adams*, 669 F. Supp. 2d 637, 654-56 (D.S.C. 2009).

Next, insofar as Plaintiff's attempts to allege federal claims under § 1983 against Defendant Thueme in her individual capacity, the Complaint filed in this case fails to state any plausible due

process (liberty interest)[3] claims against her because the allegations fail to show Plaintiff's standing to raise such claims. The United States Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Standing is a strict jurisdictional requirement, rigorously enforced when the court must decide whether the government's actions are unconstitutional. *Id*. at 819-20. A plaintiff who complains about the constitutionality of a state law or procedural rule, but who fails to take advantage of any available post-deprivation remedies does not have standing to raise the constitutional claim against the law or rule because a particularized injury cannot be shown. *See, e.g.*, *Mora v. City of Gaithersburg*, 519 F.3d 216, 230-31 (4th Cir. 2008) (finding a plaintiff who does not take advantage of available post-deprivation procedural processes has not been harmed by such processes and cannot challenge them on due process grounds); *Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) (same); *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 709-11 n.8 (M.D.N.C. 2003) (same).

Plaintiff's allegations fail to support Plaintiff's standing to raise due-process-violation claims with regard to Rule 607(i) because they do not show either Plaintiff or his attorney attempted to use the statutorily-provided alternate post-deprivation state remedies of (1) filing objections with the court reporter and seeking corrections to the transcript within 30 days of its transcription as provided in Rule 607 (i), SCACR, or after the 30-day destruction period passed, (2) moving in the appellate court to strike the allegedly incorrect transcript and to reconstruct the record as provided in South

---

[3]Although he uses the terminology "liberty interest" in some of his counts and "due process" in others, it is apparent that Plaintiff is attempting to set forth § 1983 due-process-violation claims arising from the operation of the South Carolina Appellate Court Rules. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Carolina state courts under the authority of *China v. Parrott*, 162 S.E.2d 276, 278 (S.C. 1968). Because Plaintiff has not alleged that he and/or his attorney undertook the available post-deprivation remedies for the allegedly incorrect transcripts, Plaintiff has failed to allege a "particularized injury" and has no standing to make any due process (liberty interest) claims against the operation of SCACR 607(i). *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *McCall v. Dretke*, 390 F.3d 358, 361-62 (5th Cir. 2004) (habeas case).

### b. *Due process claims generally*

Even if the court were to determine that Plaintiff has standing to assert due-process-violation claims against Defendant Thueme individually, Plaintiff has still failed to state any plausible claims against Defendant Thueme because she is entitled, at the least, to qualified immunity from any such claims. Some federal courts hold that a state court reporter may rely on the doctrine of absolute quasi-judicial immunity to avoid legal liability for damages arising from his or her professional activities. *See, e.g., Mourat v. Common Pleas Ct. of Lehigh Cnty.*, 515 F. Supp. 1074, 1076 (E.D. Pa. 1981). Quasi-judicial immunity has been found applicable in such cases because *state* court-reporting duties were found to be performed at the behest of and under the general control of the judge in a given case. *Id*. Other federal courts have held that a *federal* court reporter is not entitled to absolute quasi-judicial immunity from the claims such as those asserted by Plaintiff because the reporter does not "determine[] the law and the facts of the case . . . ." *Butz v. Economou*, 438 U.S. 478, 508-15 (1978); *see Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433-37 (1993) (finding no absolute judicial immunity for federal court reporter).

Even assuming, *arguendo*, that Defendant Thueme is not entitled to judicial immunity, she is entitled to qualified immunity. The court may consider qualified immunity at this stage when facts

supporting the application of such immunity are clear on the face of the complaint. *See, e.g.*, *Mehta v. Foskey*, 877 F. Supp. 2d 1367, 1373-74 (S.D. Ga. 2012); *Belanger v. Blum*, 628 F. Supp. 2d 260, 265-66 (D. Conn. 2009); *see also Ridpath v. Bd. of Govs. Marshall Univ.*, 447 F.3d 292, 305-06 (4th Cir. 2006) (appellate court may raise defense of qualified immunity *sua sponte*). Such facts include a court reporter's reliance on a judge's orders or on statutory authority in the performance of the disputed duties; when present, such facts protect the reporter from liability for damages arising from the performance of her duties. *See, e.g.*, *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980) (reporters acting on statutory authority); *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir. 1983) (on motion to dismiss; reporter following judge's orders).

It is clear from the face of the Complaint that Defendant Thueme is entitled to either qualified immunity or absolute quasi-judicial immunity from Plaintiff's due process claims because the facts alleged show that she was following a binding court procedural Rule (SCACR 607(i)) when she undertook the action complained off: destruction of her tapes 30 days after transcription. Accordingly, no plausible § 1983 due process claim is stated against Defendant Thueme in her individual capacity.

### c. *Equal protection claim*

Furthermore, the Complaint allegations fail to state a plausible § 1983 equal-protection claim against Defendant Thueme. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id*., and a plaintiff's "[f]actual

9

allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The equal protection guarantee does not deprive the government of all power of classification. *See Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 271 (1979). It does, however, "'keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2000) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). In the case of *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2001), the Fourth Circuit Court of Appeals provided:

> To succeed on an equal protection claim, [the plaintiff] "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* To state an equal protection claim, [the plaintiff] must plead sufficient facts to satisfy each requirement . . . .

293 F.3d at 731.

Thus, for Plaintiff to state a plausible § 1983 equal protection claim, he must allege facts that show (1) that he is a member of a class that was denied a benefit available to other similarly situated individuals, and (2) that such a denial is not rationally related to legitimate state interests. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 151 (2d Cir. 2002) (finding dismissal appropriate when complaint fails to allege an intent to disadvantage all members of a class that includes plaintiff) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)).

> Plaintiff's allegations regarding his equal protection claim follow:
>
> Upon information and belief, Rule 607(i) discriminates against indigent prisoners and non indigent officials or prisoners or people at large concerning its procedures concerning the administration court reporter possession and copying and transcription of their transcripts tapes.
>
> Such an action by the Defendant Court Reporter and other Court reporters enforcing Rul 607(i), burden plaintiff fundamental right to be heard and petition the government as everyone else who are similar situated in plaintiff position.
>
> The Defendant Court Reporter and other court reporters responsible in following or enforcing Rule 607(i) violates plaintiff equal protection rights by showing unequal treatment toward non indigents and indigents.

Compl. 13, ECF No. 1. On its face, Rule 607 (i), SCACR, does not appear to make any distinction about how it operates regarding indigent prisoners or litigants as opposed to prisoners or litigants who are not indigent. Nothing in Plaintiff's pleadings indicates how (or if) Rule 607(i) operates differently in the case of non-indigent prisoners. Instead of including such factual allegations, Plaintiff pleads his own legal conclusion, under the guise of its being a fact, that the Rule operates differently. This is the type of conclusory "fact" that the court may disregard in its construction of the pro se Complaint. *Iqbal*, 556 U.S. at 678.

As a result of Plaintiff's failure to include specific factual support for his claim, the first prong of the equal protection claim is made up only of legal conclusions couched as a factual allegations, which are disfavored under federal pleading authorities. *See Iqbal; Twombly*. Because the first prong of a plausible claim is not adequately stated, there is no need to consider the second prong about the rational relationship between the application of the Rule and "legitimate state interests." In any event, Plaintiff's Complaint contains no allegations regarding whether the Rule satisfies state interests such as the efficient operation of the state court reporters' duties and/or the economically provident use of the reporters' tapes and other equipment. As a result, because of the

conclusory nature of the pleading in this regard no plausible § 1983 equal protection claim is stated in this Complaint.

### d. State-law-based claims

Although Plaintiff briefly mentions diversity jurisdiction in his Complaint, he does not expand upon that reference. Compl. 1, ECF No. 1. Nowhere does Plaintiff indicate his citizenship or domicile prior to having been incarcerated was not in South Carolina. *See Polakoff v. Henderson*, 370 F. Supp. 690, 693 (N.D. Ga. 1973) (noting a "prisoner does not acquire a new domicile in the place of incarceration, but retains the domicile he had prior to incarceration[,]" and finding plaintiff had not averred citizenship that would create diversity jurisdiction). When all parties on both sides of a case are residents of the same state, there can be no exercise of diversity jurisdiction in a federal case, regardless of the amount in controversy. *C.L. Ritter Lumber Co. v. Consolidation Coal Co.*, 283 F. 3d 226, 229 (4th Cir. 2002) (noting parties on both sides of the case must be citizens of different states). In the absence of diversity jurisdiction or plausible federal-question claims that could support the exercise of supplemental jurisdiction, the state-law-based claims asserted by Plaintiff are subject to summary dismissal.

### e. Supplemental Jurisdiction

To the extent the court adopts this recommendation and dismisses Plaintiff's § 1983 claims, the court also can decline to continue the action as to the pendent state-law-based claims. 28 U.S.C. § 1367(c) (court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."). Therefore, it is recommended that the court decline to exercise supplemental jurisdiction over the state-law-based claims in this case because no plausible federal claim is stated.

**MOTION FOR PRELIMINARY INJUNCTION/TRO**, ECF No. 4

As noted above, Plaintiff also filed two Motions along with his Complaint. The first Motion seeks a Preliminary Injunction/TRO, in which he seeks a TRO to prevent court reporters from destroying tapes pursuant to Rule 607(i), SCACR. Mot. TRO, ECF No. 4. Plaintiff seeks a TRO until he can have a hearing before a three-judge panel concerning his challenge to Rule 607(i). *Id.* at 1. The court may only grant a TRO, which is issued "without written or oral notice to the adverse party," or a preliminary injunction, after notice to the adverse party, under strict conditions. Fed. R. Civ. P. 65. A party seeking a TRO must demonstrate " *immediate* and irreparable injury, loss, or damage will result to the applicant *before the adverse party or that party's attorney can be heard in opposition*." Fed. R. Civ. P. 65(b)(1) (emphasis added). Plaintiff's allegations do not provide any specific time or date on which the subject IAD hearing tapes are scheduled to be destroyed. Rather, Plaintiff submits that tapes of those hearings are "almost within the 5-years period for [them] to be destroyed pursuant to Appellate Court Rule 607(i)." Pl.'s Decl. Supp. TRO ¶ 23, ECF No. 4-3. Such a non-specific allegation fails to satisfy the "immediacy" aspect of the requirements for a TRO. Thus, the Motion should be construed as a Motion for Preliminary Injunction. If plausible claims are stated, the Motion would need to be served on the adverse parties and not considered by the court prior to service. Fed. R. Civ. P. 65(a)(1).

Both the TRO and preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001); *see also Moore v. Kemthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a TRO or a preliminary injunction is the same."). A petitioner seeking a preliminary injunction must establish

all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[4]

Plaintiff does not satisfy these four elements to show entitlement to a preliminary injunction. As stated above, the only substantial allegations contained in Plaintiff's Motion are that he fears that the tapes of his IAD hearings will be destroyed before he has an opportunity to have them transcribed, review them, and correct any problems he finds in the transcriptions. He alleges that the operation of Rule 607(i) violates his due process and equal protection rights and causes him irreparable damage. Although he does not specifically discuss or address the issue of why he needs relief before Defendants appear in this case, he alleges that no prejudice will result to the Defendants should his request for preliminary relief be granted in this case. ECF No. 4-4 at 12. As discussed within, the undersigned is of the opinion that Plaintiff cannot prove any likelihood of success on the merits. Further, Plaintiff has not established the balance of equities tips in his favor, nor has he demonstrated impact on the public interest. Plaintiff's Motion for Preliminary Injunction/TRO, ECF No. 4, should be denied.

---

[4]Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345-347, stating the facts and articulating the standard for the issuance of preliminary injunctions, before remanding it to the district court for consideration in light of *Citizens United*. *See The Real Truth About Obama*, 607 F.3d 355 (4th Cir. 2010).

## MOTION FOR DECLARATORY JUDGMENT, ECF No. 5

Similarly, Plaintiff's Motion for Declaratory Relief or Judgment, ECF No. 5, should be denied. In that Motion, Plaintiff essentially restates the allegations of his Complaint and asks the court to rule in his favor on all attempted claims. In light of the recommendation for summary dismissal of the Complaint for failure to state any plausible claims against Defendants, the Motion for Declaratory Judgment, ECF No. 5, should also be denied. *See Abebe v. Richland County*, No. 2:09-02469-MBS-RSC, 2009 WL 6582396, *4 (D.S.C. Oct. 8, 2009) (request for declaratory judgment "misses the mark" when it asks for declarations that the acts and omissions described in the complaint violated constitutional rights); *Wise v. United States*, C/A No. 6:09-1376-HFF-WMC, 2009 WL 2358362, * 5 (D.S.C. June 24, 2009) (same).

## RECOMMENDATION

Accordingly, it is recommended that the court dismiss the Complaint in this case without prejudice. *See Denton v. Hernandez*; *Neitzke v. Williams; Haines v. Kerner; Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *Boyce v. Alizaduh; Todd v. Baskerville*, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). It is also recommended that the court deny Plaintiff's Motion for Preliminary Injunction/TRO, ECF No. 4, and his Motion for Declaratory Judgment, ECF No. 5.

IT IS SO RECOMMENDED.

September 30, 2013                                     Kaymani D. West

Florence, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).